IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

PAM MCLAURIN, §
§
*Plaintiff,* §
§          CIVIL ACTION No. 9:09CV178
v. §
§
TEXAS EDUCATION AGENCY; §          JUDGE RON CLARK
COMMISSIONER ROBERT SCOTT; §
TEXAS STATE BOARD OF EDUCATOR §
CERTIFICATION; and ASSOC. §
COMMISSIONER JEREL BOOKER, §
§
*Defendants.* §
§

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the court is Defendants' motion for summary judgment [Doc. #21] and Plaintiff's

response [Doc. #24], as well as Plaintiff's brief in support of her due process claim [Doc. #20]

and Defendants' response [Doc. #25]. The court previously granted Plaintiff McLaurin's request

for a preliminary injunction, requiring Defendant Scott, as the executive officer of the Texas

Education Agency ("TEA"), to cause Ms. McLaurin's educator certificates to be returned to

active status until January 25, 2010. [*See* Doc. #17.] Having considered the evidence and the

parties' briefs, the court now grants Defendants' motion for summary judgment. A Texas state

court is the proper forum in which to weigh the private interest of Ms. McLaurin's sincerely held

religious beliefs against the competing governmental interest in ensuring the safety of school

children, and in which to determine whether a less restrictive means of furthering the

governmental interest is available to the state.

## I. Background

The Texas Education Code requires that the State Board for Educator Certification ("SBEC") review the criminal history record of teachers who have not previously submitted fingerprints or been subject to a criminal history review. Tex. Educ. Code Ann. § 22.0831(c) (Vernon 2006 & Supp. 2009-2010). It also provides that if an educator fails to comply with a deadline for submitting information required to conduct the criminal history review, which may include fingerprints, the SBEC shall place that educator's certificate on inactive status. *Id.* §§ 22.0831(d), (f).

Plaintiff McLaurin is a kindergarten teacher in the Big Sandy Independent School District ("Big Sandy ISD") in Dallardsville, TX, and has taught there for approximately twenty years. [Doc. #2 Ex. C, Graham Aff. at 1.] She holds three teaching certificates:

(1) Standard Classroom Teacher Elementary Self-Contained Grades (1-8) certificate;
(2) Standard Classroom Teacher Early Childhood Education Grades (PK-KG) certificate; and
(3) Provisional Vocational Agriculture Production Grades (6-12) certificate.

[*See* Doc. #6 Ex. 2 Attach. 3, McLaurin Tex. Educator Certificates.] Pursuant to Texas Education Code Section 22.0831 and its accompanying regulations, Ms. McLaurin was required to submit her fingerprints and other information necessary for her criminal history review to the TEA by November 7, 2009. [*See* Doc. #1, Pl.'s Compl. at 3; Graham Aff. at 1.]

Ms. McLaurin refused to comply with the fingerprinting requirement due to her religious beliefs, namely that having her fingerprints taken as a requirement to continue to earn her living would amount to receiving the "mark of the beast" as warned against in the book of Revelation

of the Bible.[1] [*See* Doc. #2 Ex. B, McLaurin Aff. at 1-2; Doc. #6 Ex. 1 at 7-9 (letter from Ms. McLaurin to Kenneth Graham, Superintendent for Big Sandy ISD, detailing her religious beliefs and objection to being fingerprinted).] She filed suit against Defendants SBEC, TEA, and the Commissioner and Associate Commissioner of the TEA on November 3, 2009, alleging causes of action under 42 U.S.C. § 1983 based on the First Amendment free exercise clause and the Fourteenth Amendment due process clause, and under the Texas Religious Freedom and Restoration Act ("TRFRA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 110.001-.012 (Vernon 2005). Ms. McLaurin sought a temporary restraining order ("TRO") to prevent her teaching certificates from being placed on inactive status as a result of her failure to comply with the fingerprinting requirement. [*See* Doc. #2, Mot. for TRO.] The court denied her request for an ex parte TRO [*see* Doc. #4], and Ms. McLaurin's educator certificates were placed on inactive status when she did not submit her fingerprints by November 7, 2009 [*see* McLaurin Tex. Educator Certificates (showing certificates on inactive status on November 13, 2009)]. After a hearing on November 17, 2009, the court granted a preliminary injunction enjoining Commissioner Scott to return Ms. McLaurin's certificates to active status until January 25, 2010. [*See* Doc. #17.]

Following the preliminary injunction hearing, the court dismissed Ms. McLaurin's TRFRA claim [*see* Doc. #15], because only a state court may hear that claim, *see* Tex. Civ. Prac.

---

[1]  The book of Revelation states that those who receive the mark of the beast will not be afforded salvation but instead eternal damnation. *See Revelation* 14:9 to 14:10 ("If anyone worships the beast and his image and receives his mark on the forehead or on the hand, . . . [h]e will be tormented with burning sulfur in the presence of the holy angels and of the Lamb."); *id.* at 16:1 to 16:2. It also states that those who receive the mark of the beast are the ones that will be allowed to buy, sell, and trade. *See id.* at 13:16 to 13:17 ("no one could buy or sell unless he had the mark").

& Rem. Code Ann. § 110.008 (waiving sovereign immunity to suit in state courts for TRFRA claims, but preserving Eleventh Amendment immunity to suit in federal courts). Defendants now move for summary judgment on Ms. McLaurin's constitutional claims.

## II. Summary Judgment Standard of Review

A party may move for summary judgment on all or part of a claim. Fed. R. Civ. P. 56(a), (b). A summary judgment motion should be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only a genuine dispute over a material fact—a fact that might affect the outcome of the suit under the governing substantive law—will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The parties now agree that there are no remaining factual disputes, and that the claims pending before the court present questions of law for the court to resolve. [*See* Doc. #18, Pl.'s Notice at 1-2 ("[The] claims that remain pending before the Court essentially present questions of law that may be resolved . . . based on the parties['] briefings and on the evidence presented at the hearing for the Preliminary Injunction."); Doc. #19, Defs.' Notice at 2 (" The federal constitutional claims that remain pending before the Court essentially present questions of law that may be resolved by the Court based on the parties' briefing and on the evidence presented at the earlier hearing on preliminary injunctive relief.").]

Rule 56 requires the court to consider "the pleadings, the discovery and disclosure materials on file, and any affidavits." Fed. R. Civ. P. 56(c). The court must view all facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. Eleventh Amendment Immunity

Defendants SBEC and TEA assert that, as state agencies, they are entitled to Eleventh Amendment immunity from suit. [*See* Doc. #6, Defs.' Resp. to Mot. for TRO at 7-8.] A state is immune from suits brought against it in federal court by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 1355 (1974). There are two exceptions pursuant to which an individual may sue a state: (1) when Congress abrogates the states' immunity; and (2) when a state waives its immunity by consenting to suit. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005). Neither exception applies in this case. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S. Ct. 900, 907 (1984) (§ 1983 does not abrogate states' immunity; any consent to suit by a state must be "unequivocally expressed").

The SBEC and TEA are agencies of the Texas state government and thus parts of the state for purposes of Eleventh Amendment immunity. *See Eddins v. Excelsior Indep. Sch. Dist.*, 88 F. Supp. 2d 683, 685 (E.D. Tex. 2000) (Eleventh Amendment immunity barred § 1983 suit against TEA), *aff'd*, 33 F. App'x 703 (5th Cir. 2002); Tex. Educ. Code Ann. § 21.035 (Vernon 2006 & Supp. 2009-2010) (TEA charged with providing SBEC's administrative functions and services). Thus, the Eleventh Amendment precludes Plaintiff from maintaining her constitutional claims against the SBEC and TEA, and the court grants summary judgment to those two

defendants on that ground.[2] Ms. McLaurin may, however, maintain constitutional claims for injunctive relief against Defendants Scott and Booker. *See Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 321-22 (5th Cir. 2008) (citing *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908); *Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988)) (Eleventh Amendment bars retrospective relief in form of money judgment to compensate for past wrongs, but does not bar prospective injunctive or declaratory relief against state employee acting in official capacity).

## IV. First Amendment Free Exercise Claim

Ms. McLaurin alleges that the fingerprinting requirement violates her First Amendment right to freely exercise her religion, because she must either participate in the fingerprinting process in violation of her religious beliefs, or have her teaching certificates placed on inactive status. [Pl.'s Compl. at 4.] The First Amendment free exercise clause, which has been made applicable to the states by incorporation into the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S. Ct. 900, 903 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof," U.S. Const. amend. I. However, the right of free exercise does not relieve an individual of the obligation to comply with a "valid and neutral law of general applicability" on the ground that the law requires conduct that the individual's religion proscribes. *Employment Div., Dept. of Human Res. v. Smith*, 494 U.S. 872, 877-79, 110 S. Ct. 1595, 1599-1600 (1990) (Oregon's criminal laws could proscribe a Native American's religious use of peyote without violating the

---

[2] Further, Section 1983 applies only to "persons," and neither states nor state agencies are "persons" within the meaning of Section 1983. *Ruiz v. Estelle*, 679 F.2d 1115, 1137 (5th Cir. 1982), *vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982).

First Amendment).[3] Pursuant to the Supreme Court's holding in *Employment Division*, a state "does not impermissibly regulate religious belief . . . when it promulgates a neutral, generally applicable law or rule that happens to result in an incidental burden on the free exercise of a particular religious practice or belief." *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 135 (5th Cir. 2009).

The Texas Education Code provision requiring teachers to submit their fingerprints is a neutral law of general applicability. The provision is religiously neutral, i.e. not directed toward any particular religion or religious practice, and is generally applicable to all educators who wish to obtain or retain an educator certificate, regardless of any educator's personal religious practices or affiliation. There is no evidence in the record indicating that the provision is being selectively applied in a manner that burdens any particular religious practice or belief. Thus, as a neutral law of general applicability, the fingerprinting requirement does not violate Ms. McLaurin's right under the United States Consitution to freely exercise her religion. *See Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999) (Plaintiff was denied driver's license when he

---

[3] Congress responded to *Employment Division* by enacting the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb to 2000bb-4, which restored the test requiring any governmental regulation that substantially burdens the free exercise of religion to employ the least restrictive means of advancing a compelling governmental interest. *Merced v. Kasson*, 577 F.3d 578, 587 (5th Cir. 2009). The Supreme Court struck down RFRA as applied to the states. *Id.* (citing *City of Boerne v. Flores*, 521 U.S. 507, 532-34, 117 S. Ct. 2157, 2170-71 (1997)). Thus, the holding of *Employment Division* remains valid as to state laws. Texas likewise responded to *Employment Division* by enacting TRFRA, which provides the same protections to religious free exercise as its federal counterpart. *Id.* The court previously dismissed Plaintiff McLaurin's TRFRA claims on the grounds of Eleventh Amendment immunity. [*See* Doc. #15]; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 110.008 (Eleventh Amendment immunity preserved); *Pennhurst*, 465 U.S. at 106, 104 S. Ct. at 911 (*Ex parte Young* does not apply to suits against state officials on the basis of state law). Ms. McLaurin remains free, however, to pursue her TRFRA claim in state court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.008 (sovereign immunity waived).

refused to provide his social security number ("SSN") for religious reasons; court held California law requiring applicants to provide SSN in order to obtain license, and DMV's enforcement of the law, did not violate Plaintiff's free exercise because law was a neutral one of general applicability); *In re Turner*, 193 B.R. 548, 554 (Bankr. N.D. Cal. 1996) (right to free exercise not violated by Bankruptcy Code provision requiring petitioner to subscribe SSN on documents for filing, even though he believed SSN was "mark of the beast" which his religion forbade him from using, because provision was neutral law of general applicability). Therefore, the court grants summary judgment to the defendants on Ms. McLaurin's Section 1983 First Amendment free exercise claim.

## V. Fourteenth Amendment Due Process Claim

Ms. McLaurin also asserts that her procedural due process rights were violated because she was denied an opportunity for a hearing before her teaching certificates were placed on inactive status. [*See* Doc. #20, Pl.'s Br. at 1.] The Fourteenth Amendment due process clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Defendants assert that because the fingerprinting requirement is a "legislative" action, Ms. McLaurin is not entitled to procedural due process beyond that which has already been provided by the legislative process; Ms. McLaurin asserts that the placement of her teaching certificates on inactive status is an "adjudicative" or "administrative" action that entitles her to notice and a hearing before her certificates are rendered inactive.

**A. Applicable Law**

Generally, if the court views governmental conduct as legislative, a property owner has no procedural due process rights, whereas if a governmental action is viewed as adjudicative, procedural due process rights may attach. *County Line Joint Venture v. City of Grand Prairie, Tex.*, 839 F.2d 1142, 1144 (5th Cir. 1988); *75 Acres, LLC v. Miami-Dade County, Fla.*, 338 F.3d 1288, 1293-94 (11th Cir. 2003) (*comparing Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445-46, 36 S. Ct. 141, 142 (1915), *with Londoner v. City & County of Denver*, 210 U.S. 373, 385-86, 28 S. Ct. 708, 714 (1908)). If an act is viewed as adjudicative, procedural due process rights follow only if a person establishes a property right created by state or local law. *County Line*, 839 F.2d at 1144; *see also Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1528 (5th Cir. 1993) (procedural due process clause implicated only if a person has a constitutionally recognized interest in life, liberty or property). The amount of process due depends on the balancing of interests as described in *Matthews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893 (1976).[4] Conduct of a governmental body is likely to be deemed legislative when an elected group makes a general decision that applies to a large group of interests; conversely, government action is more likely to be viewed as adjudicative if an appointed group makes a specific decision regarding a specific property interest. *County Line*, 839 F.2d at 1144.

---

[4] The court in *Matthews* identified three interests that must be balanced: (1) the private interest that will be affected by the government action; (2) the risk of an erroneous deprivation of the interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the financial and administrative burdens that additional or substitute procedural safeguards would entail. 424 U.S. at 335, 96 S. Ct. at 903.

In *County Line*, plaintiff County Line owned a piece of real property in Grand Prairie, Texas and held a specific use permit ("SUP"). *Id.* at 1143. Nine years after County Line had first acquired the SUP, the Grand Prairie city council passed an ordinance that would automatically terminate all SUPs that were not used for a period of six months. *Id.* Nine months after passage of the ordinance, County Line's current tenant applied to the city secretary for an alcoholic beverage license, a dance hall license, and a mechanical amusement device license. *Id.* The tenant was denied the licenses, because such licenses could not be issued without an SUP, and County Line's SUP had terminated because its property had been unoccupied for approximately one year. *Id.* County Line then brought suit against the city for denial of procedural due process. *Id.*

County Line argued that the court should view the city ordinance and its application as an adjudicative act, and that its due process rights were violated when the city failed to give County Line notice and a hearing prior to the time the ordinance operated to extinguish its SUP. *Id.* at 1144. The city asserted that the court should view the city's conduct in adopting and applying the ordinance as a legislative act. *Id.* The court held that the enactment of the SUP ordinance "was a result of a purely legislative act by the city council of Grand Prairie, an elected body which wields broad power to make a decision in the area of city planning and zoning," because the ordinance "applie[d] generally to all SUPs in existence and those thereafter created." *Id.* at 1145. There was no evidence that the ordinance was aimed specifically at County Line; rather, it called for termination of all SUPs that were not used for a period of six months. *Id.* Thus, County Line did not have a claim for violation of its procedural due process rights. *Id.* at 1146.

10

In *75 Acres*, a real estate developer brought a Section 1983 action against Miami-Dade County, alleging that a county code provision was unconstitutional under the due process clause. 338 F.3d at 1289. The county code provision at issue required the county manager to issue an administrative order prohibiting the issuance of building permits on any parcel of property that was implicated in a criminal information. *Id.* at 1290. The state attorney had filed a criminal information implicating the real estate developer's property, and pursuant to the code provision, the county manager imposed a building moratorium on the property. *Id.* The developer was not given an opportunity to challenge the moratorium prior to its imposition. *Id.* The developer filed suit against the county, alleging that it had been deprived of pre-deprivation notice and a hearing. *Id.* at 1292.

The county contended that the imposition of a building moratorium was a legislative action, and thus procedural due process requirements did not apply because the legislative process provided all the process that was constitutionally due. *Id.* The developer argued that the building moratorium at issue was an adjudicative rather than a legislative act, because the deprivation was not "of general applicability," but rather was targeted on a particular piece of property. *Id.* The court held that the automatic imposition of a building moratorium pursuant to the county code did not require the county to afford individual procedural due process protections to affected property owners. *Id.* at 1293. The court rejected the developer's argument that the code provision was not a statute of general applicability, because any property owner in the county would be subjected to a moratorium if his or her property were implicated in a criminal information. *Id.* at 1297. The court viewed the filing of a criminal information as a "legislatively-defined condition precedent" to the imposition of a moratorium. *Id.* at 1297-98

11

(citing *County Line*, 839 F.2d at 1146, for the proposition that a deprivation triggered by the occurrence of a legislatively-defined condition unrelated to any government action is a legislative rather than an adjudicative deprivation). The developer "was not entitled to procedural due process protections when the County Manager, acting without discretion, heeded the legislative command . . . and imposed a moratorium . . . after the criminal information was filed." *Id.* at 1298.

## B. Discussion

With the above principles and case law in mind, the court concludes that the placement of an educator's certificate on inactive status pursuant to Texas Education Code Section 22.0831 is a legislative act. It is undisputed that Section 22.0831 was enacted by a legislative body through the legislative process. As in *County Line*, where the court held that enactment of the SUP ordinance was a purely legislative act by an elected body that "wield[ed] broad power to make a decision in the area of city planning and zoning," Section 22.0831 was a purely legislative act by an elected body, the Texas legislature, which has the power to make decisions regarding the qualifications of licensed professionals, including teachers. *See Dent v. West Virginia*, 129 U.S. 114, 123, 9 S. Ct. 231, 233 (1889) (to protect society against unqualified licensed professionals, state may impose conditions on licensure, including requiring professionals to satisfy additional conditions after license is granted); *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730, 104 S. Ct. 2709, 2718 (1984) (decision to apply conditions retroactively satisfies due process if justified by rational legislative purpose); *State v. Project Principle, Inc.*, 724 S.W.2d 387, 391 (Tex. 1987) (state may impose conditions on teacher certification, even on teachers previously certified, if justified by rational legislative purpose). The Texas legislature concluded

12

that, in its judgment, an educator's certificate should be placed on inactive status for failure to timely submit the information required to conduct a criminal history review. The fingerprinting requirement is justified by the rational legislative purpose of conducting criminal history reviews of teachers in order to ensure the safety of children who attend public schools.

The fingerprinting requirement is a generally applicable law. As in *County Line*, where any SUPs in existence at the time the ordinance was enacted, as well as those thereafter created, would be terminated after six months of non-use, in this case any educator certificate in existence at the time Section 22.0831 was enacted, as well as those thereafter obtained, will be placed on inactive status if the holder fails to timely submit his or her fingerprints. *See also 75 Acres*, 338 F.3d at 1297 (any property owner in the county would be subjected to building moratorium if his or her property were implicated in a criminal information). Although it is true that Section 22.0831 has been applied specifically to Ms. McLaurin in the instant case, the provision is not targeted at any particular educator. *See 75 Acres*, 338 F.3d at 1298 (although moratorium was applied specifically to plaintiff developer's property, the moratorium resulted from the application of a generally applicable ordinance).

In this case, failure to timely submit the fingerprint information required for a criminal history review is a legislatively-defined condition precedent to placing an educator's certificate on inactive status, just as in *75 Acres* a criminal information was a condition precedent to the imposition of a building moratorium, and in *County Line* six months of non-use was a condition precedent to the termination of an SUP. Further, just as the developer in *75 Acres* was not entitled to procedural due process protections "when the County Manager, acting without discretion, heeded the legislative command . . . and imposed a moratorium . . . after the criminal

13

information was filed," Ms. McLaurin was not entitled to procedural due process protections when the SBEC and TEA, acting without discretion, heeded the Texas legislature's command and placed her teaching certificates on inactive status when she failed to comply with the mandatory fingerprinting requirement. *See* Tex. Educ. Code Ann. § 22.0831(c) (SBEC "*shall* review the national criminal history record information of a person who has not previously submitted fingerprints" (emphasis added)); *id.* § 22.0831(d) (SBEC "*shall* place an educator's certificate on inactive status for failure to comply with a deadline for submitting information required" (emphasis added)).

Further, even if procedural due process protections did attach in this case, an evaluation of the *Matthews v. Eldridge* factors reveals that additional procedural safeguards would have been futile. With respect to the first factor, the court recognizes that Ms. McLaurin has a strong interest in maintaining her teaching certificates in active status. *See* 19 Tex. Admin. Code § 232.907(c) (2009) (SBEC) (teacher whose certificate is in inactive status is ineligible for employment in a Texas public school). Likewise, with respect to the third factor, the government has a strong interest in protecting the safety of school children by performing criminal background checks on teachers.

As to the second factor, the probable value of additional procedural safeguards is nil. Ms. McLaurin does not seek a pre-deprivation hearing in order to challenge the factual basis on which her teaching certificates would be placed on inactive status; rather, she concedes that she has not complied with the mandatory fingerprinting requirement. Instead, she seeks an administrative hearing in order to state her religious claims under TRFRA and the First Amendment free exercise clause. [*See* Doc. 24, Pl.'s Resp. to Mot. for Summ. J. at 6-8.] As

14

noted above, the SBEC and TEA do not have the discretion to except Ms. McLaurin from the fingerprinting requirement on those grounds, because they are bound by the Texas legislature's mandate that an educator's certificates *shall* be placed on inactive status for failure to comply. On the other hand, the Texas legislature did provide a procedure and forum by which the sincerely religious like Ms. McLaurin can have a neutral judge consider their arguments and weigh their interests against those of the state and of society as a whole. *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.001-.012 (TRFRA).[5]

Because Section 22.0831 is a legislative rather than an adjudicative act and thus Ms. McLaurin was not entitled to procedural due process protections before her educator certificates were placed on inactive status, and because additional procedural safeguards would have been futile in any event, the court grants summary judgment to the defendants on Ms. McLaurin's Section 1983 Fourteenth Amendment procedural due process claim.

Defendants' Motion for Summary Judgment [Doc. #21] is hereby **GRANTED**.

So **ORDERED** and **SIGNED** this **22** day of **January, 2010.**

_____
Ron Clark, United States District Judge

---

[5]  A Texas state court is the proper forum in which Ms. McLaurin may assert her TRFRA claim. The regulations promulgated pursuant to the fingerprinting statute require the TEA to provide notice to teachers at least eighty calendar days in advance of the date their fingerprints must be submitted. *See* 19 Tex. Admin. Code § 232.905(b)(2). This time period is sufficient for a teacher to meet the sixty-day notice requirement for bringing a TRFRA action in state court prior to the date on which his or her certificates will become inactive if fingerprints are not submitted. *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.006(a). Likewise, the number of days between the preliminary injunction hearing on November 17, 2009 and the expiration of the preliminary injunction on January 25, 2010 was also sufficient for Ms. McLaurin to have complied with TRFRA's sixty-day notice requirement and to have filed suit in state court.